**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARGARITA MUKITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 7604 |
| | ) | |
| ADVOCATE HEALTH AND HOSPITALS | ) | Judge Joan H. Lefkow |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

Margarita Mukite filed this case against Advocate Health and Hospitals Corporation (Advocate) alleging (1) fraudulent inducement and (2) employment discrimination based on race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII). (Dkt. 16.) Advocate moves to dismiss all counts. (Dkts. 8, 19.)[1] For the reasons stated below, Advocate's motions to dismiss (dkts. 8, 19) is denied.[2]

---

[1] On October 27, 2015, Advocate filed a motion to dismiss Mukite's complaint. (*See* dkt. 8.) Shortly thereafter, Mukite moved to amend/correct the complaint (dkt. 13), which the court granted (dkt. 15). On December 8, 2015, Mukite filed an amended complaint (dkt. 16), and Advocate filed a motion to dismiss the amended complaint on December 22, 2015 (dkt. 19). Since the original complaint has been superseded, , the court denies Advocate's first motion to dismiss as moot.

[2] The court has jurisdiction under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 2000e-16, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b).

# BACKGROUND[3]

## I. Factual Background

Mukite, a Hispanic female from Mexico, worked for Advocate from 2009 until January 2014. (Dkt. 16 ¶¶ 10–11.) During her employment, Advocate rated her performance at or above business expectations (*id.* ¶ 14) and never gave her negative feedback (*id.* ¶ 18). She was promoted twice, first to Director of Patient Access in 2010 and then to Director of Training & Development and Quality Assurance in 2013. (*Id.* ¶¶ 12–13.) As the only Hispanic in the management group, her superior, Rick Layman, a white male, treated her differently from other employees by ignoring her suggestions, discrediting her accomplishments, consistently denying meeting requests, and repeatedly using racial epithets to refer to Mukite. (*Id.* ¶ 17.)

On February 26, 2014, Layman discharged Mukite for "failing to meet business requirements." (*Id.* ¶ 18.) That same day, Mukite met with Amy Liss, Human Resources Manager, and Amy Logue, Vice President of Human Resources at Advocate's Oak Brook, Illinois office. (*Id.* ¶ 20.) They presented Mukite with a Severance Agreement and General Release (Agreement).[4] (*Id.*) In exchange for Mukite's waiving all claims against Advocate, including those arising under common law and Title VII, the Agreement provided enhanced

---

[3] The facts described herein are taken from the amended complaint and its supporting exhibits and are accepted as true for the purposes of this motion. *See Thompson* v. *Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002) (citation omitted); Fed. R. Civ. P. 10(c). The court may consider the exhibits attached to the complaint without converting defendants' motions to dismiss into motions for summary judgment. *See Wright* v. *Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (noting that a court may consider documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claims").

[4] References to the Agreement include the Separation Memorandum, which enclosed the Severance Agreement and General Release. The Separation Memorandum explains "the basic benefits to which [Mukite is] entitled as a terminated employee," and describes enhanced benefits which [Advocate is] offering to [her] in exchange for a full and complete release of any and all claims." (Dkt. 16-1 at 3.)

severance benefits[5] to which Mukite was not otherwise entitled. (Dkt. 16-1 at 3, 6–7.) Execution of the Agreement also waived Mukite's right to reinstatement with Advocate. (*Id.* at 7.)

Although the Agreement was silent on the possibility of rehiring Mukite to fill a different position, Liss and Logue advised Mukite that she was eligible to be rehired. (Dkt. 16 ¶¶ 21–22.) Relying on Liss and Logue's statement, Mukite signed the Agreement. (*Id.* ¶ 25.) Liss and Logue, however, knew Advocate had eliminated Mukite's position to limit their Title VII liability and that Advocate would not rehire Mukite due to its "policy of discrimination." (*Id.* ¶¶ 22–23.)

Mukite subsequently applied for nine positions within Advocate for which the hiring managers advised her she was qualified and that they intended to hire her. (*Id.* ¶¶ 26–27.) Nevertheless, she was refused employment (*id.* ¶ 28) and Advocate ultimately hired white men and women for these positions (*id.* ¶ 30). Mukite later learned from former colleagues that Advocate's Human Resources Department advised the hiring managers to never rehire Mukite. (*Id.* ¶ 28.) After learning this, on July 10, 2014, Mukite contacted Liss, who informed Mukite that she would never be rehired by Advocate "because she was not a good employee and she was a typical Hispanic woman who never had the proper experience and always had a bad attitude." (*Id.* ¶ 29.)

Finally, Mukite alleges that as a result of her reliance on Liss and Logue's eligibility statement, she suffered damages for lost wages and the waiver of claims against Advocate. (*Id.* ¶ 38.)

---

[5] It appears Mukite was entitled to "basic benefits," which included health, dental, and vision care benefits under the health care continuation plan; payment of accrued time off; pension benefits; after tax extension of medical flexible spending, whether or not she executed the Agreement. (Dkt. 16-1 at 3.) The "enhanced benefits" that Mukite would receive under the Agreement included severance pay; incentive pay; career transition services; and health, dental, and vision premiums at the same contribution rate as active associates. (*Id.*)

## II.     Procedural History

On August 18, 2014, Mukite filed a charge of discrimination based on national origin with the Equal Employment Opportunity Commission (EEOC). (Dkt. 16-1 at 1.) Mukite alleged, in part, that during her employment with Advocate, "I was subjected to different terms and conditions of employment . . . [and] [o]n or around February 26, 2014, I was discharged. I believe i [*sic*] have been discriminated against because of my national origin, Mexican, in violation of Title VII of the Civil Rights Act of 1964." (*Id.*) On May 27, 2015, the EEOC issued a right to sue letter. (*Id.* at 2.) On August 28, 2015, Mukite filed the present suit against Advocate who now moves to dismiss.

## LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted.  In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949.

Allegations of fraud are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. 9(b). This means that the plaintiff must plead the "who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.* v. *Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (citations and internal quotation marks omitted). "Rule 9(b) should be applied with an eye toward fulfilling the Rule's underlying purposes '(1) to inform the defendants of claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations.'" *Gelco Corp.* v. *Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at *6 (N.D. Ill. Dec. 26, 2002) (quoting *Fujisawa Pharm. Co., Ltd.* v. *Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993)). Where the fraudulent scheme occurred over a period of time, the requirements of Rule 9(b) may be less stringently applied. *See Gelco*, 2002 WL 31875537, at *6.

## ANALYSIS

### I. Fraudulent Inducement

Fraudulent inducement is a form of common law fraud. *Beaton* v. *SpeedyPC Software*, No. 13 C 08389, 2014 WL 4376219, at *3 (N.D. Ill. Sept. 2, 2014). To state a cause of action for common-law fraud in Illinois, a plaintiff must plead "(1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Id.* Advocate alleges that Mukite fails to allege sufficient facts to satisfy the first, third, and fourth elements.

A.    **False Statement of Material Fact**

The first element of fraud requires that there be a false statement of material fact. *Id.* "A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." *LoggerHead Tools, LLC* v. *Sears Holding Corp.*, 19 F. Supp. 3d 775, 782 (N.D. Ill. 2013) (quoting *Continental Bank, N.A.* v. *Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993)).

Advocate argues that the alleged fraudulent statement—that Mukite was eligible for rehire—was "essentially . . . a promise to be rehired, which is a future promise that is not actionable." (Dkt. 20 at 6, n.5.)[6] To the contrary, the statement made by Liss and Logue was a false statement of a present fact or condition: Mukite's eligibility to be rehired at the time the statement was made. The statement was not that she would one day in the future *become* eligible for rehire. Moreover, the plain meaning of eligibility is that a person is "fit and proper to be selected or to receive a benefit; legally qualified for an office, privilege, or status." BLACK'S LAW DICTIONARY (10th ed. 2014) (defining eligible); *Ardalan* v. *McHugh*, No. 13 C 1138, 2014 WL 3846062, at *10 (N.D. Cal. Aug. 4, 2014) (noting that if the plaintiff was eligible to be rehired he "thus could be considered 'qualified'"). Thus, to state that an individual is eligible for rehire is to say that at that time the person met all the hiring requirements. Liss and Logue's statement therefore conveyed to Mukite that she was *currently* "fit and proper to be selected" for rehire, not that she would certainly be hired in the future.

This interpretation of "eligible" is consistent with how it was interpreted in *Graham* v.

---

[6] Advocate repeatedly asserts that Mukite "has not shown that she was not 'eligible' to be rehired." (Dkt. 20 at 6, n.5; dkt. 27 at 5, n.2.) Mukite is not required to show or prove any fact at this stage. Mukite need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

*Town of Normal*, No. 07 C 1284, 2010 WL 582608, at *5, n.9 (C.D. Ill. Feb. 10, 2010). There, the plaintiff worked at a town-operated golf course. *Id.* at *1. When quitting, the plaintiff was told by his superior that he was eligible for rehire, but he was not rehired when he later applied to work for defendant. *Id.* at *1–2. The plaintiff brought suit alleging discriminatory failure to rehire. *Id.* at *2. The court noted that "even if [defendant] told him [that he was eligible for rehire], it is not a reasonable inference that merely stating the Plaintiff was 'eligible' to be rehired is the same as saying that he *would* be rehired." *Id.* at *5, n.9 (emphasis added).

Because Liss and Logue's stated a present fact, which was false because Mukite could not have met all the hiring requirements if one of the requirements was not to be Hispanic, Mukite has sufficiently alleged facts that allow the court to draw a reasonable inference that defendant made a false statement of material fact.[7]

### B. Intent to Induce

The third element of fraud requires that the false statement be made with an intention to induce the plaintiff to act. *Beaton*, 2014 WL 4376219, at *3. Advocate contends that Mukite did not adequately plead the third element but provides no basis for such allegation. Indeed, an examination of the amended complaint suggests the opposite. Mukite alleges the following facts which sufficiently allege that Liss and Logue intended to induce Mukite to sign the Agreement: that Liss and Logue were aware (1) that they were eliminating Mukite's position to limit Advocate's liability under Title VII (dkt. 16 ¶ 23) and (2) "that Advocate would never rehire the plaintiff for any position within Advocate because of its policy of discrimination based on race

---

[7] Even if it was a future statement, Mukite would survive the pleading stage. Illinois recognizes an exception to the general rule stated in *LoggerHead*, such that a future statement may be actionable if it is part of a scheme to defraud another. *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012). To invoke the scheme exception, the plaintiff must allege that at the time the promise was made, the defendant did not intend to fulfill it. *Id.* Mukite alleged that, whether or not she was eligible, Advocate never intended to consider her for future employment. (Dkt. ¶¶ 22, 28, 29; dkt. 25 at 2.)

7

and national origin" (*id.* ¶ 22), and that because they were aware of (1) and (2) they were motivated to have Mukite sign the Agreement to mitigate any liability (*id.* ¶ 24).

### C. Reasonable Reliance

The fourth element requires the plaintiff to reasonably rely on the statement. *Beaton*, 2014 WL 4376219, at *3. Advocate argues that Mukite could not have reasonably relied on the statement because (1) it was contrary to the Agreement and (2) the Agreement's integration clause precludes reliance on outside statements. (Dkt. 20 at 8–9.)

#### 1. Contrary to the Agreement

Advocate contends that Mukite could not have reasonably relied on the statement—that Mukite was eligible for rehire—because it "runs counter to the express language" in the Agreement. (*Id.* at 8.) Under Illinois law, courts examine an agreement as a whole, according to its plain and ordinary meaning, *Int'l Cap. Grp., LLC* v. *Starrs*, No. 10 C 3257, 2011 WL 66027, at *3 (N.D. Ill. Jan. 10, 2011), and consider separate provisions in light of the context of the entire agreement, *Bauer* v. *Int'l Bhd. Elec. Workers Local No. 150 Pension Fund*, No. 13 C 710, 2014 WL 273887, at *4 (N.D. Ill. Jan. 24, 2014) (citing *Young* v. *Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010)). The Agreement states that "[Mukite] waives any right to reinstatement." (Dkt. 16-1 at 7.) The Agreement never mentions waiving the right to rehire. Although Advocate argues that "reinstate" and "rehire" are synonymous (*see* dkt. 20 at 8), their plain meanings suggests otherwise. Reinstatement means to "place again in a former state, condition, or office." BLACK'S LAW DICTIONARY (10th ed. 2014) (defining reinstate); *see also Kahn* v. *Cont'l Cas. Co.*, 63 N.E.2d 468, 475–76, 391 Ill. 445 (1945) ("To reinstate means to instate again; to place the policy in the position it was in before . . . . It implies the right of the [plaintiff] to be placed in the same condition that he occupied before the forfeiture, and it implies

the duty on the part of the [defendant] to place the [plaintiff] in that condition." (internal quotation marks omitted)). In contrast, rehire means to again "engage the labor or services of another for wages." BLACK'S LAW DICTIONARY (10th ed. 2014) (defining hire). Reinstatement in other words is a form of rehiring, but rehiring is not limited to reinstatement.

Advocate also argues that Mukite could not have reasonably relied on the statement because Mukite could have discovered the misrepresentation by merely reading the Agreement. (Dkt. 20 at 8.) While it is true that "fraudulent inducement is not available as a defense when one had the opportunity to read the contract and by doing so could have discovered the misrepresentation," *Pierce* v. *Atchinson, T. & S.F. Ry.*, 65 F.3d 562, 569 (7th Cir. 1995), here, Mukite could not have discovered the misrepresentation by reading the Agreement. First, for the reasons stated in the previous paragraph—because the statement does not run counter to the express language in the Agreement—Mukite could not have discovered the misrepresentation by reading the Agreement. Moreover, the Agreement arguably implies that there is a possibility of rehiring Mukite. The Agreement promises to provide career transition support for Mukite in her "internal/external job search." (Dkt. 16-1 at 5.) Advocate notes that this clause clearly contemplates employment outside of Advocate. (Dkt. 20 at 9.) Such an interpretation, however, is contrary to the explicit language of the Agreement.

Thus, Mukite could have reasonably relied on the Liss and Logue's statement—that she was eligible for rehire—where such statement is not rejected or contradicted in the Agreement and a thorough reading of the Agreement would not have resulted in the discovery of the misrepresentation.

### 2. Barred by Integration Clause

Advocate contends that the integration clause contained in the "Entire Agreement"

9

provision of the Agreement (dkt. 16-1 at 9) precludes Mukite from successfully alleging reasonable reliance. (Dkt. 20 at 9.) An integration clause "states that a contract represents the entire agreement between the parties and by virtue of the parole evidence rule, 'prevents a party to a contract from basing a claim of breach of contract on agreements or understandings, whether oral or written, that the parties had reached during negotiations . . . but that they had not written into the contract itself." *Boscia* v. *Monroe/Wabash Dev., LLC*, No. 1-10-2250, 2011 WL 10069624, at *4 (Ill. App. Ct. June 13, 2011) (citing *Vigortone AG Prod., Inc.* v. *PM AG Prod., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002)). Under Illinois law, "an integration clause does not bar a claim of fraud based on statements not contained in the contract." *Vigortone*, 316 F.3d at 644. The Seventh Circuit noted that to prevent fraud suits, contractual parties "will sometimes insert a 'no-reliance' clause into their contract, stating that neither party has relied on any representations made by the other." *Id.* No-reliance clauses are different from integration clauses in that they explicitly require each party to acknowledge that "neither party to the agreement has relied on any representations made by the other party, except for the representations contained within the terms of the contract." *Id.* Because reliance is an element of fraud, "the [no-reliance] clause, if upheld . . . precludes a fraud suit," *id.* at 645, whereas an integration clause does not. *Id.* at 644.[8]

The issue then is whether the Entire Agreement provision in the Agreement is an integration clause or a no-reliance clause. The Entire Agreement provision states, "This Agreement along with the Separation Memorandum attached hereto, is the entire agreement of the Parties. No other promises or agreements express or implied, shall be binding between the Parties unless in writing, signed by all Parties." (Dkt. 16-1 at 9.) This language is distinguishable from the language in contracts from cases in which courts have found no-reliance clauses. *See*

---

[8] *Vigortone* explains that fraud is a tort and the parole evidence rule is not a doctrine of tort law. 316 F.3d at 644. An integration clause limits the evidence available in a contract dispute. *Id.* "It has nothing to do with whether the contract was induced . . . by fraud." *Id.*

10

*e.g.*, *In re Kindra Lake Towing, L.P.*, No. 15 C 3174, 2016 WL 3227303, at *2–3 (N.D. Ill. June 13, 2016) ("Foundation 'understands' that Black Diamond made no 'representation . . . regarding . . . the seaworthiness' of the barge."); *Extra Equipamentos E Exportacao Ltda*. v. *Case Corp.*, 541 F.3d 719, 730 (7th Cir. 2008) ("*No Reliance On The Other Party:* Both parties represent and warrant . . . they are relying on their own judgment, belief and knowledge . . . . The parties are not relying on representations or statements made by the other party . . . except . . . [as] expressed in this Release."); *Rissman* v. *Rissman*, 213 F.3d 381, 383 (7th Cir. 2000) ("[T]he parties further declare that they have not relied on representation of any party . . . [and that] this Agreement is executed . . . freely and voluntarily, and without reliance upon any statement or representation . . . except as set forth herein."). Notably, no-reliance clauses establish that the parties' decision to contract is not based on representations made by an opposing party and that, instead, the decision is based solely on the contractual terms contained in the agreement. *See Vigortone*, 316 F.3d at 644. The Entire Agreement provision, here, does not warrant, represent, declare, or acknowledge that the parties relied only on the representations set forth in the Agreement.

The Entire Agreement provision simply represents that the contract is the entire agreement between the parties. Nothing in this provision, nor in the rest of the Agreement, establishes no-reliance on outside statements. Thus, the Entire Agreement provision is an integration clause. *See e.g.*, *Dolmage* v. *Combined Ins. Co. of Am.*, No. 14 C 3809, 2016 WL 754731, at *5 (N.D. Ill. Feb. 23, 2016) (stating that the following language appeared to be intended as an integration clause: "The policy is a legal contract. *It is the entire contract between you and us*. . . . Any change to it must be in writing and approved by us. Only our President or one of our Vice-Presidents can give our approval."); *Royce* v. *Michael R. Needle, P.C.*, No. 15 C

11

259, 2016 WL 393147, at *4 (N.D. Ill. Feb. 2, 2016) (indicating that the agreement contained a classic integration clause which stated, "<u>Entire Agreement</u>. This Agreement represents the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes all prior agreements thereto, whether written or oral"). In the absence of a no-reliance clause, Mukite could reasonably rely on outside statements for purposes of her fraud claim. Therefore, the fourth element is adequately alleged.

Since each of the disputed elements has been adequately alleged, Advocate's motion to dismiss Mukite's fraudulent inducement claim is denied.

## II. Employment Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Mukite alleges that Advocate discriminated against her in violation of Title VII by (1) terminating her (dkt. 16 ¶¶ 18–19) and (2) failing to hire her on the basis of race and national origin (*id.* ¶¶ 26–30). In its motion to dismiss and reply brief, Advocate does not address Mukite's claim of failure to rehire based on racial discrimination. As such, the court only addresses Mukite's claim as to her discriminatory discharge.

Advocate asserts (1) Mukite waived her right to bring a Title VII claim and, alternatively, (2) Mukite is barred from bringing a Title VII claim because she failed to tender back all compensation received under the Agreement.

### A. Waiver

Advocate asserts that Mukite is barred from bringing a Title VII claim pursuant to the

12

Release of All Claims provision in the Agreement, which states,

> Employee hereby releases and discharges [Advocate] from any and all claims . . . including, but not limited to, matters which . . . could be asserted against [Advocate] arising out of or relating in any way to Employee's employment with or termination of his/her employment from [Advocate], and including, but not limited to claims, demands, or actions arising under Title VII of the Civil Rights Act of 1964 . . . and any other federal, state, or local statute . . . and/or any common law, statutory, or other claim whatsoever arising out of or relating to Employee's employer with/or termination from [Advocate]and/or any other occurrence.

(Dkt. 16-1 at 6.) An individual may waive claims under Title VII provided her consent to the release was voluntary and knowing. *Kinney* v. *Hamilton Partners*, No. 03 C 3905, 2004 WL 765882, at *5 (N.D. Ill. Apr. 7, 2004) (citing *Wagner* v. *Nutrasweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996)). Nevertheless, such waiver is invalid under certain circumstances, including fraud or duress. *Lannan* v. *Reno*, No. 97-3170, 1998 WL 90843, at *3 (7th Cir. Feb. 26, 1998). Because the court finds Mukite sufficiently alleged fraudulent inducement, it is premature to rule that the waiver is valid. Therefore, Mukite is not barred by the Agreement from bringing a Title VII employment discrimination claim against Advocate.

### B. Tender Back Defense

Advocate further claims that Mukite is barred from bringing a Title VII claim because she failed to tender back all compensation received under the Agreement. Generally, "a plaintiff must tender back any consideration she received before she can reassert the legal claims she previously relinquished under a release." *Wright* v. *Heritage Envtl. Servs.*, No. 99 C 7579, 2000 WL 1474410, at *3 (N.D. Ill. Oct. 4, 2000); *see also Lawson* v. *J.C. Penny*, 580 F. App'x. 492, 494 (7th Cir. 2014) (requiring the plaintiff, who received $75,000 in exchange for relinquishing legal claims, to return the full amount in order to reassert those claims). There are three exceptions to the rule: (1) if fraud is alleged; (2) if the plaintiff received inadequate

compensation under the release; or (3) if a statute abrogates the tender back requirement.[9] *See Lawson*, 580 F. App'x. at 494 (citing *Fleming* v. *U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259, 261 (7th Cir. 1994)).

Under the Agreement, Mukite waived all claims against Advocate in exchange for enhanced benefits. (*See* dkt. 16-1 at 3, 6.) Because Mukite has successfully alleged fraudulent inducement of the Agreement, she need not tender back the compensation received to bring this Title VII claim.

### C. Adequately Pleaded Employment Discrimination Claim

The Seventh Circuit has instructed that the requirements for pleading race discrimination are minimal. *See Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). To prevent dismissal under Rule 12(b)(6), a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of his race." *Johnson* v. *Bellwood Sch. Dist. 88*, No. 14 C 10498, 2016 WL 3476660, at *4 (N.D. Ill. June 27, 2016) (quoting *Lavalais* v. *Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013)). Here, Mukite alleges (1) that she is a Hispanic female from Mexico (dkt. 16 ¶ 10), (2) that she was the only Hispanic manager (*id.* ¶ 17), (3) that her superior treated her differently from other employees by ignoring her suggestions, discrediting her accomplishments, consistently denying meeting requests, and repeatedly using racial epithets to refer to her (*id.*), (4) that she was fired on February 26, 2014, for allegedly failing to meet business requirements (*id.* ¶ 18), and (5) that the reason for her termination was a "pretext for unlawful discrimination based on race and national origin" (*id.* ¶ 19). As such, racial and national origin discrimination is sufficiently alleged. *See*

---

[9] Three statutes abrogate the tender back requirement: Federal Employers' Liability Act, 45 U.S.C. § 51, Jones Act, 46 U.S.C. § 688(a), and Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. No statute abrogates the tender back requirement for releases of claims under Title VII. *See Fleming*, 27 F.3d at 261–62.

*Gallardo* v. *Chi. Transit Auth.*, No. 15 C 7458, 2016 WL 3165768, at *2 (N.D. Ill. June 7, 2016) (finding that plaintiff had sufficiently pleaded race discrimination where he alleged that he is Hispanic, he complained to management repeatedly about the lack of training and equipment he received in comparison to non-Hispanic maintenance managers); *Grady* v. *Bd. of Trs. of N. Ill. Univ.*, 78 F. Supp. 3d 768, 777 (N.D. Ill. 2015) (finding that plaintiff had sufficiently pleaded race discrimination where he alleged that he was fired because he is African American, that the basis for his firing was pretextual, and that he was treated worse than other Caucasian employees who were involved in more serious misconduct); *Harris* v. *Illinois*, 753 F. Supp. 2d 734, 740 (N.D. Ill. 2010) (finding that it was sufficient for plaintiff to allege that "Defendants' actual reason for terminating [plaintiff's] employment was retaliation for her protected activities and/or her race or color" to prevent dismissal under 12(b)(6)).

Accordingly, Advocate's motion to dismiss Mukite's Title VII claim based on discriminatory termination is denied.

## CONCLUSION & ORDER

As set forth above, Advocate's motion to dismiss (dkt. 8) is denied as moot and motion to dismiss (dkt. 20) is denied.

Date: July 28, 2016

_____
U.S. District Judge Joan H. Lefkow